IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBI-ANNE TOY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-10-5155 |
| ERIC H. HOLDER, JR., ATTORNEY GENERAL, | § § § § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant Eric H. Holder, Jr.'s Motion to Dismiss and for Summary Judgment (Document No. 10). Having considered the motion, submissions, and applicable law, the Court determines that the motion to dismiss should be granted.

## I. BACKGROUND

This is a Title VII discrimination and retaliation case. On December 22, 2010, Plaintiff Bobbi-Anne Toy ("Plaintiff") filed an Original Complaint (the "Complaint") against Attorney General Eric Holder, Jr. ("Defendant") as head of the Department of Justice, under which the Federal Bureau of Investigation (the "FBI") operates.[1] Plaintiff alleges that the FBI violated Title VII of the Civil Rights Act of 1964 by

---

[1] *Complaint*, Document No. 1.

discriminating against her based on her gender. Specifically, Plaintiff claims that the FBI revoked her security access to an FBI facility based on discriminatory animus related to her gender. In addition, Plaintiff claims that the FBI revoked her conditional offer of employment as a result of gender discrimination and as an act of retaliation in response to Plaintiff's filing of discrimination charges with the Equal Employment Opportunity Commission (the "EEOC"). Defendant denies these allegations and moves for dismissal of the Complaint.

Plaintiff is a female that was employed by an independent contractor, Dyncorp Inc., to work as a data and intelligence analyst for the FBI at their regional office in Beaumont, Texas. Although she was employed by a private contractor, Plaintiff contends that she was directly supervised by and worked with FBI employees.[2] During the time at issue, Carlos Barron ("Barron"), an FBI agent located in the Houston office, acted as the supervisor of several intelligence programs, including those on which Plaintiff worked, while Brett Davis ("Davis") acted as the head of the Beaumont facility.[3]

---

[2] Plaintiff states that "at all times, her work was controlled by FBI personnel and the methods and manner in which she performed the work was dictated by FBI personnel in Beaumont and Houston." *Complaint*, Document No. 1 at 2, ¶ 5. Consequently, Plaintiff argues that she "was an employee of the FBI for purposes of Title VII." *Id.* Defendant does not dispute this contention.

[3] Plaintiff contends that Barron was her direct supervisor, not Davis. *Id.* at 2, ¶ 8.

2

Plaintiff contends that the alleged discriminatory conduct began when Davis became the head of the Beaumont office. Plaintiff claims that Davis "had problems with women" and that Plaintiff was a "strong willed, independent young woman working in a male-dominated hierarchy."[4] Plaintiff also asserts that Davis made several attempts to have Plaintiff terminated.[5] Defendant, on the other hand, claims that a conflict begin to arise between the Plaintiff and Davis, not because of any opinions Davis had of women, but because Plaintiff failed to follow FBI regulations and policies. Specifically, Defendant claims that "Plaintiff engaged in activities of a FBI agent without the permission of her supervisors."[6] For instance, Defendant asserts that Plaintiff was "representing to others outside the FBI that she was an employee of the FBI" and that she had been participating in tactical narcotics operations by going undercover with FBI agents without the authorization or knowledge of Davis or Barron.[7] In addition, Defendant contends that Davis was

---

[4] *Id.* at 2, ¶ 6.

[5] Specifically, Plaintiff contends that "Davis was abrasive and ultimately proved to be unstable. He also had problems with women." *Id.* at 2, ¶ 7; *see also id.* at 2, ¶ 8.

[6] *Defendant Eric H. Holder, Jr.'s Motion to Dismiss and for Summary Judgment*, Document No. 10, at 7.

[7] *Id.* at 8. Defendant also says that Plaintiff "would access FBI computers using passwords that did not belong to her, have telephone lines installed without having proper approval, load software onto unsecured computers, and purchase items that were not previously approved." *Id.*

3

notified in July 2004, that Plaintiff "was dating the son of a FBI subject."[8] Plaintiff refutes these contentions and argues that she did "nothing inappropriate."[9]

Notwithstanding the parties' disagreement as to the source of the confrontation, it is undisputed that during this time, tension arose between Plaintiff and Davis. It is also undisputed that eventually Barron, after discussion with Davis, revoked Plaintiff's access to the Beaumont office.[10] Based on the revocation of her security access to the Beaumont office, Dyncorp terminated Plaintiff as an analyst. Plaintiff then filed an Equal Employment Opportunity ("EEO") complaint, alleging gender discrimination.

Meanwhile, during the same time period, Plaintiff submitted an application to be formally employed by the FBI and received a conditional offer of employment. Unit Chief Therese Rodrique, the individual who processed Plaintiff's formal FBI application for employment, contacted Barron and Agent Townsend, another agent with whom Plaintiff worked, to discuss Plaintiff and her job performance. Both Barron and Townsend submitted negative references for Plaintiff. Barron also

---

[8] *Id.* at 9.

[9] *Complaint*, Document No. 1 at 2, ¶ 5.

[10] The parties dispute whether Plaintiff's security clearance, in its entirety, was revoked, or whether the revocation was only minimal and only applied to her access to the building. This distinction will be discussed in greater detail in Part III.

informed Rodrique that Plaintiff's security clearance had been revoked. Consequently, Plaintiff's conditional offer of employment with the FBI was rescinded. Plaintiff contends that the conditional employment offer was rescinded in retaliation of her filing the EEO complaint and because of discriminatory references given by Barron and Townsend. Defendant, on the other hand, argues that no discrimination or retaliation occurred and that Rodrique did not have knowledge of the EEO complaint when she revoked the conditional offer. Instead, Defendant claims that the revocation occurred because Plaintiff's security clearance had been revoked.

Defendant now moves to dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's alleged cause of action is precluded by the National Security Exemption of Title VII of the Civil Rights Act of 1964, the Supreme Court's *Egan* opinion, or both. *See* 42 U.S.C. § 2000e-2(g) (setting forth a statutory exception to Title VII claims) (hereinafter the "National Security Exemption"); *see also Dept. of the Navy v. Egan*, 484 U.S. 518 (1988). Defendant argues that even if the National Security Exemption is not applicable, the Plaintiff has failed to establish a *prima facie* case for either her discrimination or retaliation claims, and therefore summary judgment is proper. Plaintiff, on the other hand, contends that the National Security Exemption

is not applicable and that she has met her burden of establishing a *prima facie* case under both the discrimination and the retaliation frameworks.

## II. STANDARD OF REVIEW

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' it demands more than 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breeches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Conversely, 'when the allegations in a complaint, however true, could not raise a

claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### III. LAW & ANALYSIS

Defendant moves, under Rule 12(b)(6), to dismiss this case, arguing that Title VII of the Civil Rights Act of 1964, as amended, exempts causes of action against an employer when the claim is premised on the revocation or denial of a national security clearance and that, here Plaintiff's security clearance was revoked. Plaintiff responds by arguing that Barron did not revoke her security clearance in its entirety, he only revoked her access to the Beaumont office, and moreover, that Barron did not have authority to revoke her security clearance in its entirety. Plaintiff argues that the mere revocation of her building access was not a security program "administered under any statute of the United States or any Executive Order of the President," as is required to invoke the National Security Exemption, and therefore, this Court retains jurisdiction to hear the dispute.

As an initial matter, the Court notes that the parties disagree on whether Plaintiff's security clearance was revoked in its entirety or whether only her building

7

access was revoked.[11] As discussed above, on a 12(b)(6) motion the Court must assume that all factual allegations of Plaintiff's are true. Therefore, the Court will, as it must, assume that only Plaintiff's security access to the Beaumont office was revoked when deciding the motion to dismiss. The threshold issue presented, therefore, is whether this Court has jurisdiction to adjudicate Plaintiff's claims based solely on Plaintiff's alleged facts.

*A.    The National Security Exemption and Fifth Circuit Precedent*

The National Security Exemption of Title VII specifically states:

> **(g) National Security**
> Notwithstanding any other provision of this subchapter, it shall ***not*** be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position, for an employer to discharge any individual from any position, or for an employment agency to fail or refuse to refer to any individual for employment in any position, if—
> (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in

---

[11] Defendant argues that Plaintiff's assertion "that only her access to the building was revoked, and not her security clearance or access to sensitive data, is patently false" and attached evidence to its motion and reply, tending to show that the revocation of building access was just one part of the security clearance revocation. *Defendant Eric H. Holder, Jr.'s Reply in Support of its Motion to Dismiss and Request for Extension of Time to File Reply in Support of its Summary Judgment Motion*, Document No. 14 at 3. When deciding a motion to dismiss under Rule 12(b)(6), however, extrinsic evidence is not taken into consideration. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Therefore, for purposes of this Rule 12(b)(6) motion, the Court will not consider the exhibits attached to either Defendant's motion to dismiss or to Plaintiff's response.

> effect pursuant to or administered under any statute of the United States or any Executive order of the President; and
>
> (2) such individual has not fulfilled or has ceased to fulfill that requirement.

42 U.S.C. 2000e-2(g) (emphasis added). In addition, the Supreme Court has made clear that courts should not question Executive Branch decisions to deny or revoke national security clearances, as this would be an impermissible intrusion onto matters of national security. *See Dept. of the Navy v. Egan*, 484 U.S. 518 (1988) (holding, in a non-Title VII case, that courts should not review executive agency decisions to deny security clearances). Neither party has cited, nor has this Court found, any Fifth Circuit precedent directly interpreting the National Security Exemption. However, the Court of Appeals for the Fifth Circuit has applied the Supreme Court's *Egan* decision to Title VII claims. *Perez v. Fed. Bureau of Investigation*, 71 F.3d 513 (5th Cir. 1995), *cert denied* 517 U.S. 1234 (1996). In *Perez*, a plaintiff sued the FBI, alleging that "the FBI took acts of retaliation against him by revoking his top-security clearance and firing him." *Id.* at 514. The FBI, on the other hand, argued that the Plaintiff's security clearance in *Perez* was revoked, not as a retaliatory measure, but because he "(1) fabricated official reports, and (2) disclosed classified information to unauthorized representatives of the Cuban Government." *Id.* The Fifth Circuit determined that the courts did not have jurisdiction over this dispute. *Id.* at 515.

Applying the Supreme Court's *Egan* analysis, Fifth Circuit explained:

> Because the court would have to examine the legitimacy and the possibly pretextual nature of the FBI's proffered reasons for revoking the employee's security clearance, any Title VII challenge to the revocation would of necessity require some judicial scrutiny of the merits of the revocation decision. . . . [and] such scrutiny is an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security . . . .

*Id.* at 514–15. In making its decision, the Fifth Circuit in *Perez* relied solely on the *Egan* precedent. Therefore, the Court must consider both the National Security Exemption laid out in Title VII, as well as the *Egan/Perez* progeny.

The Defendant in this case argues that *Perez* is directly on point, and that this Court should dismiss these Title VII claims because this Court is not permitted to analyze Barron's decision to revoke the Plaintiff's building access. Plaintiff argues that this case is distinguishable from *Perez* because it was not a denial of a full-fledge security clearance, and that the prohibition of the National Security Exemption does not apply. The Fifth Circuit has yet to analyze whether *Perez* applies more broadly than full security clearance denials or revocations. Therefore, this Court will look to other circuits for guidance.

B.  *Applications of* Egan *and the National Security Exemption in Other Circuits*

Other circuits, like the Fifth Circuit, have made clear that courts do not have jurisdiction to consider Title VII claims premised on the denial or revocation of a security clearance. *See, e.g.*, *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996); *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 196–97 (9th Cir. 1995).[12] In addition, the Court of Appeals for the Ninth Circuit and the Fourth Circuit have extended this prohibition of adjudication beyond pure "security clearance" revocations or denials. *Becerra*, 94 F.3d at 149; *Brazil*, 66 F.3d at 196–97. Specifically, the Ninth Circuit applied the Supreme Court's *Egan* analysis and determined that the courts did not have jurisdiction over a plaintiff's Title VII claim that was premised on the revocation of something other than a formal "security clearance." There, the plaintiff was denied a Nuclear Weapons Personnel Reliability Program Certification, which was a prerequisite to the plaintiff's employment. *Brazil*, 66 F.3d at 196–97. Moreover, the Fourth Circuit has held that even the ***instigation***

---

[12] When addressing this issue, some courts have acknowledged both sources of judicial constraint. *See Ryan v. Reno*, 168 F.3d 520, 524–25 (D.C. Cir. 1999). In *Ryan v. Reno*, the D.C. Circuit relied upon the *Egan* reasoning, but added that its decision was "fortified by Title VII's express language exempting employment actions based on security clearance possession." *Id.* at 525 n.3. Although it analyzed both *Egan* and the National Security Exemption, the *Ryan* Court failed to explain the overlap of these two doctrines. *See id.* Therefore, this Court acknowledges that both *Egan* and the National Security Exemption may preclude adjudication and will address the two concurrently.

11

*of an investigation* into whether or not to revoke a security clearance is not subject to judicial scrutiny. *Becerra*, 94 F.3d at 149. In *Becerra*, the Fourth Circuit stated, "the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference." *Id.* Considering *Egan* and earlier Fourth Circuit opinions, the court in *Becerra* explained that courts should not inquire into the Executive Branch's "authority to grant or deny access to national security information." *Id.* (quoting *Guillot v. Garrett*, 970 F.2d 1320, 1324 (4th Cir. 1992)). Moreover, the Tenth Circuit has suggested in dicta that a contract employee's denial of access to a secured space would be precluded from adjudication in a federal court based on *Egan*. *See Beattie v. United States of America*, 949 F.2d 1092, 1095 (10th Cir. 1991) (dismissing the case as moot, but suggesting that *Egan* would preclude the Court's jurisdiction when an employee of a airplane company under contract with the U.S. Air Force was denied access to an Air Force One project area).

C.  *Application of the National Security Exemption and* Egan

What is clear from both *Perez* and case law from other circuits is that the National Security Exemption and *Egan* prohibit courts from passing judgment on an executive agency's decision to revoke or deny access to confidential and secure information. While the Plaintiff argues that her security clearance was not revoked

in whole, the Court finds that even assuming that only Plaintiff's building access was revoked, current case law would still prohibit this Court from delving into the murky waters of analyzing the FBI's denial of access to the Beaumont office.[13] Further, the Court finds that based on the current state of case law on this issue, adjudication of both the discrimination and retaliation claims would require the Court's intrusion into the merits of the security access determination, at least peripherally.

*1. Plaintiff's Discrimination Claim*

In her discrimination claim, Plaintiff alleges that Barron's revocation of her security access to the Beaumont office was the adverse employment action that occurred as a result of discriminatory animus. In order to determine whether that action, itself, was based on discrimination, the Court would have to investigate and weigh the FBI's rationale for revoking access to the office. Therefore, the Court finds that it cannot adjudicate Plaintiff's discrimination claim without violating the *Egan* prohibition, and therefore, the Court has no jurisdiction over the claim. Accordingly, Plaintiff's discrimination claim is dismissed.

---

[13] In fact, even courts that have determined that *Egan* or the National Security Exemption to Title VII are inapplicable in certain cases, have acknowledged that these limitations apply beyond the scope of security clearance revocations or denials. *See Jones v. Aschcroft*, 321 F. Supp. 2d 1, 8 (D.D.C. 2004) ("[T]his Court does not hold that section 2000e-2(g)'s exemption is necessarily limited only to security clearance determinations . . . .").

## 2. The Retaliation Claim

Plaintiff's retaliation claim is slightly more attenuated. In her Complaint, Plaintiff claims that the revocation of her conditional offer of employment constitutes an adverse employment action that was taken because of retaliatory animus.[14] Later, in her Response, Plaintiff argues that Barron's and Townsend's negative references to Rodrique were part of the retaliatory animus as well.[15] Defendant responds with a non-retaliatory reason for revocation of the offer. Specifically, Defendant contends that the conditional offer of employment was revoked because Plaintiff's security clearance, or at the least her access to a secure FBI facility, had been revoked.

Plaintiff's retaliation claim is based on an action that is one step removed from the security access decision. Therefore, while the Fifth Circuit's *Perez* decision makes clear that *Egan* might foreclose a claim of retaliation under Title VII, there is

---

[14] The Complaint asserts that "Ms. Toy's conditional offer of employment was revoked as a result of gender discrimination and retaliation." *Complaint*, Document No. 1 at 4, ¶ 17.

[15] Despite having originally contended that the revocation of the conditional offer was the adverse employment action, in her Response, Plaintiff contends that "The Negative References Were Retaliatory." *Plaintiff's Response to Defendant's Motion to Dismiss and for Summary Judgment*, Document No. 13 at 15 (Heading to Part VI). The Court construes Plaintiff's argument to be that the negative references given to Rodrique imputed any retaliatory animus of Barron and Townsend onto Rodrique, who revoked the offer of employment. *See Gee v. Principi*, 289 F.3d 342, 346 & n.2 (5th Cir. 2002) (holding that a decisionmaker may be imputed with the retaliatory animus of someone they relied upon when making the decision to enforce the adverse employment action in a Title VII retaliation case).

a distinction between *Perez* and the case at bar: In *Perez* the "adverse employment action" was the revocation of the security clearance itself. Here, Plaintiff's claim is one step removed—the revocation of security access is the proffered "non-retaliatory" reason for the adverse employment action; it is not the action itself.

The Court finds the D.C. Circuit's opinion in *Ryan v. Reno* to be instructive.[16] There, the D.C. Circuit faced a similar situation. The Plaintiff in *Ryan* was given a conditional offer of employment with the Immigration and Naturalization Service ("INS"), which was later revoked after he could not obtain the property security clearance. *Id.* at 523–24. Plaintiff claimed that he was being discriminated against, however the INS argued that the revocation of the conditional offer was based on its inability to conduct an adequate security clearance background investigation on plaintiff. *Id.* at 524. The D.C. Circuit explained that the plaintiff could not challenge the proffered reason's authenticity without challenging its validity as well and decided that the court could not adjudicate the case. *Id.* The court held that "an

---

[16] The *Ryan* court stated that its holding was "limited to Title VII discrimination actions and does not apply to actions alleging deprivation of constitutional rights." *Ryan*, 168 F.3d at 524. This Court finds that the D.C. Circuit was attempting to preclude application of its analysis to claims involving constitutional violations, not other Title VII claims because, in making this statement, the D.C. Circuit cites *Webster v. Doe*, 486 U.S. 592, 603 (1988), a case that directly dealt with constitutional claims. Therefore, while *Ryan* is not identical to the present case, this Court draws analogy to *Ryan* for both Plaintiff's discrimination and retaliation claims.

adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII." *Id.*

Similarly, even assuming that the Plaintiff in this case presents a *prima facie* case of discrimination, the Court or a jury would inevitably have to determine whether the Defendant's proffered non-retaliatory reason for revoking the conditional offer—the revocation of security access—was valid or was merely pretextual. Such a determination would invariably rub against the prohibition set forth in *Egan*. Therefore, until a more clear delineation is drawn by the circuit courts, and specifically the Fifth Circuit, this Court determines that it is precluded from adjudicating the merits of Plaintiff's retaliation claim based on the National Security Exemption and the Supreme Court's *Egan* opinion.

In sum, all of Plaintiff's claims revolve directly around the revocation of her security access to the Beaumont office—the revocation led to her immediate termination and, according to the Defendant, led to the revocation of her conditional offer of employment. For this Court to analyze either of Plaintiff's claims would invariably require the Court to second guess the FBI's revocation of her security access, and therefore, dismissal of all claims is proper.

## IV. CONCLUSION

Accordingly, the Court hereby

ORDERS that Defendant Eric H. Holder, Jr.'s Motion to Dismiss and for Summary Judgment (Document No. 10) is GRANTED. The Court further ORDERS that Plaintiff's claims are DISMISSED.

SIGNED at Houston, Texas, on this __18__ day of May, 2012.

DAVID HITTNER
United States District Judge